1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

KIM C. CLARK,

11

Plaintiff,

v.

12

BACON, *et al.*,

13

Defendants.

14

CASE NO. 2:23-cv-00927-BHS-GJL

REPORT AND RECOMMENDATION

Noting Date: June 13, 2024

15        This prisoner civil rights action filed pursuant to 42 U.S.C. § 1983 has been referred to

16   United States Magistrate Judge Grady J. Leupold. Presently pending before the Court is

17   Defendants' Motion for Summary Judgment ("Motion"), which argues, among other things, that

18   dismissal is appropriate because Plaintiff failed to exhaust administrative remedies prior to filing

19   suit. Dkt. 20. For the reasons set forth below, the Court recommends Defendants' Motion (Dkt.

20   20) be **GRANTED** and this case be closed.

21   //

22   //

23

24

# I.     BACKGROUND

## A.     Plaintiff's Factual Allegations

Plaintiff Kim C. Clark's Complaint is based on two incidents that occurred while she was housed in the King County Correctional Facility ("KCCF") as a pretrial detainee. *See* Dkt. 9. Defendants Bacon, Cordero-Nieves, and Warfield ("KCCF Defendants") were staff members at KCCF at the time of those two incidents. *See* Dkts. 9, 20.

On September 5, 2022, Plaintiff was attacked from behind with punches to the head by Inmate Brady-Davis while Plaintiff was sitting in KCCF's Classification Office with a staff member. *Id*. at 4–5; Dkt. 22 at 5, Ex. A, Inmate Grievance Report, 9/5/2022. Inmate Brady-Davis was issued an infraction for assaulting Plaintiff. Dkt. 22 at 9–10, Ex. B, Supervisor's Incident Report, 9/5/2022. Plaintiff initially declined medical attention, but was later examined by KCCF medical staff for redness and swelling on her face. Dkt. 22 at 10, Ex. B. Plaintiff was then cleared by medical to remain in custody with no further medical treatment. *Id*.

In a second incident, Plaintiff alleges that on September 15, 2022, Inmate Brady-Davis threatened to attack her again by stating, "Round 2" from behind her cell door while Plaintiff was performing her work duties. Dkt. 22 at 15, Ex. C, Inmate Grievance Report, 9/19/2022.

## B.     Defendants' Evidence

### 1.     KCCF Grievance Procedures

At the time of booking in KCCF, every inmate receives a copy of the Inmate Information Handbook detailing the procedures for redressing any concerns that arise during their detention. *See* Dkt. 22, ¶ 3, A. Williams Dec.; *see also* Dkt. 22, Ex. E, Inmate Information Handbook. The steps for filing grievances are outlined in the provided Handbook, as well as on the grievance form itself. Dkt. 22, ¶ 3 ; *see also* Dkt. 22, Ex. E.

Inmates are instructed to first utilize the "kite" system to direct a concern or complaint to jail staff familiar with the concern as a means of resolving the issue. Dkt. 22, ¶ 4. If the concern or complaint is not resolved or if it pertains to the staff member, inmates are instructed to file an administrative grievance within 14 days of the alleged incident. *Id*. Once submitted, administrative grievances are ordinarily reviewed and processed within 10 days. Dkt. 22 at 43, Ex. E. Inmates who are unsatisfied with the resolution of their administrative grievance may appeal using the same process for filing an initial grievance. *Id.* KCCF personnel then process these responses to the appealed administrative grievances within 20 days unless the inmate is otherwise notified in writing. *Id.*

2.    Plaintiff's Classification

To maintain order and security in KCCF, "Keep Separate" orders are used to document past conflicts between inmates to ensure they are not placed in a "tank"—a grouping of cells in the section of the jail where inmates share common areas—together in the future. Dkt. 22, ¶ 7. Prior to the alleged incidents, Plaintiff's Classification Records indicate that a "Keep Separate" notation was entered on September 3, 2022, to keep Inmate Brady-Davis and Plaintiff in separate tanks due to "threats to fight if housed together." Dkt. 22 at 26, Ex. D, Classification Record.

3.    Plaintiff's Use of Available Grievance Procedures

Starting in 2008 and through the relevant period, all grievances filed by KCCF inmates were maintained by Andrea Williams, who is the Records and Information Systems Manager for King County Department of Adult & Juvenile Detention ("DAJD"). Dkt. 22, ¶ 2. Ms. Williams testifies that, according to her records, Plaintiff filed an Inmate Grievance Report on September 13, 2022, relating to the September 5, 2022, assault by Inmate Brady-Davis. Dkt. 22, ¶¶ 8; *see also* Dkt. 22 at 5, Ex. A, Inmate Grievance Report 0922-268. In that Grievance, Plaintiff also

1    raised related concerns regarding her classification in KCCF. *See* Dkt. 22 at 5, Ex. A. A Staff

2    Response/Decision dated October 24, 2022, informed Plaintiff that "[t]he information regarding

3    your incident has been forwarded to the Internal Investigation Unit. You may kite to them for

4    further information." *Id*. at 6. In addition, a Supervisor's Incident Report was prepared as to the

5    September 5, 2022 assault by Inmate Brady-Davis. Dkt. 22, Ex. B.

6        Plaintiff filed an Inmate Grievance Report on September 19, 2022, relating to the

7    September 15, 2022, incident at the cell door of Inmate Brady-Davis. Dkt. 22, Ex. C, Inmate

8    Grievance Report 0922-269. In addition, Plaintiff again raised concerns regarding her

9    classification. *See* Dkt. 22 at 15, Ex. C. The Staff Response/Decision dated October 22, 2022,

10   noted, "[y]ou have previously been informed of other housing options and you have declined. On

11   10/20/2022 you told classification you have 'no concerns' in your current housing. Your use of

12   the grievance process regarding the other inmate falls under misuse of the process for harassing

13   another inmate."[1] Dkt. 22 at 16, Ex. C.

14       Each Inmate Grievance Report form instructs inmates of their right to appeal should they

15   not be satisfied with the Staff Response/Decision. *See* Dkt. 22 at 6, Ex. A; Dkt. 22 at 16, Ex. C.

16   The existing record reflects that Plaintiff did not appeal the Response/Decision of either Inmate

17   Grievance Report. Dkt. 22, ¶ 12.

18   //

19   //

20

21

22   _____

[1] Plaintiff's Classification Staff notes from a regular review held on September 20, 2022, note that Plaintiff "was concerned about being around Brady-Davis who assaulted her on 9/5/22 . . . . Subject sys [sic] she still feels uncomfortable around her, was advised to change floor work . . . , subject refused saying she will not alter her floor work because of another inmate's actions, no other concerns." Dkt. 22 at 31, Ex. D. Subsequent reviews held before Plaintiff was transferred in October 2023 indicate she had no concerns or issues relating to her current location or assignment. Dkt. 22 at 28–30, Ex. D.

23

24

1

**C.     Procedural Background**

2          On June 20, 2023, Plaintiff, proceeding *pro se*, filed the instant suit pursuant to 42 U.S.C.

3   § 1983, alleging Defendants violated her constitutional rights by failing to prevent another

4   prisoner from (1) striking her in the head, and (2) making an allegedly aggressive statement

5   towards Plaintiff while they were detained in KCCF. Dkts. 1, 9. After Plaintiff paid the filing fee

6   (*see* Dkt.), the Court ordered service of the Complaint (Dkt. 10), and imposed deadlines for

7   conducting discovery and submitting dispositive motions (Dkt. 17).

8          After the discovery period concluded, Defendants filed the instant Motion seeking

9   summary judgment on all claims. Dkt. 20. The time for Plaintiff to file a response was April 29,

10  2024. As of the date of this Report and Recommendation, Plaintiff has not filed a response to the

11  Motion. *See* Dkt.

12                      **II.     STANDARD OF REVIEW**

13         Summary judgment is appropriate when the "movant shows that there is no genuine

14  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

15  Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The central issue is

16  "whether the evidence presents a sufficient disagreement to require submission to a jury or

17  whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at

18  251–52.

19         The moving party bears the initial burden of showing "that there is an absence of

20  evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

21  (1986). Where the moving party does not bear the burden at trial, it can carry its initial burden by

22  presenting evidence that negates an essential element of the nonmoving party's case, or by

23  establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at

24

trial. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party bears the burden at trial, it can meet its initial burden by presenting evidence sufficient to demonstrate that no reasonable trier of fact could find for the nonmoving party; the evidence presented must establish beyond controversy every essential element of the claim. *Southern California Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888–89 (9th Cir. 2003).

If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 258. Material facts are those which might affect the outcome of the suit under governing law. *Id.* A mere scintilla of evidence cannot create a factual dispute. *Id.* at 252. Likewise, the nonmoving party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

Allegations based merely on the plaintiff's belief are not enough to oppose summary judgment, as are unsupported conjecture and conclusory statements. *Id.*; *McElyea v. Babbitt*, 833 F.2d 196, 197–98 n.1 (9th Cir. 1987). In ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, and may not weigh the evidence or make credibility determinations, *Anderson*, 477 U.S. at 248.

Where, as here, the nonmoving party fails to respond to the summary judgment motion, the Court cannot grant the motion automatically. *Heinemann v. Satterberg*, 731 F.3d 914, 916

1   (9th Cir. 2013) ("[A] motion for summary judgment may not be granted based on a failure to file

2   an opposition to the motion."); Local Rules W.D. Wash. LCR 7(b)(2). Rather, the Court can

3   grant summary judgment only if "the motion and supporting materials—including the facts

4   considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3); *see*

5   *Heinemann*, 731 F.3d at 916. A fact may be considered undisputed at summary judgment if it is

6   raised in an unopposed motion. Fed. R. Civ. P. 56(e)(3); *Heinemann*, at 916.

### III.    DISCUSSION

8   In their Motion, Defendants argue they are entitled to summary judgment on the bases

9   that: (1) Plaintiff failed to exhaust the administrative remedies available to her at KCCF before

10  filing suit, (2) Plaintiff's Complaint lacks the necessary factual and legal bases for stating an

11  actionable claim, (3) Plaintiff fails to state a § 1983 failure to protect claim against Defendants,

12  and (4) Defendants are entitled to dismissal of the claims against them pursuant to qualified

13  immunity. Dkt. 20 at 6–7. Because Plaintiff has not filed a response in opposition to the Motion,

14  the Court considers each fact raised therein as undisputed. *See* Local Rules W.D. Wash. LCR

15  7(b)(2); Fed. R. Civ. P. 56(e)(3); *Heinemann*, 731 F.3d at 916.

16  **A.    Defendants' Argument in Favor of Summary Judgment Based on Plaintiff's Failure
    to Exhaust Administrative Remedies**

17  Before a prisoner may bring a civil rights action under 42 U.S.C. § 1983, she must first

18  exhaust all available administrative remedies. Under the Prison Litigation Reform Act of 1995

19  ("PLRA"):

20      No action shall be brought with respect to prison conditions under section 1983 of
        this title, or any other Federal law, by a prisoner confined in any jail, prison, or
        other correctional facility until such administrative remedies as are available are
        exhausted.

23  42 U.S.C. § 1997e(a). Exhaustion in cases covered by § 1997e(a) is mandatory. *Booth v.*

24  *Churner*, 532 U.S. 731, 739 (2001). The mere fact a plaintiff has filed an initial grievance under

1   a prison's grievance policy does not satisfy the PLRA exhaustion requirement; a plaintiff must

2   exhaust all levels of an available grievance procedure before she can initiate litigation. *See id.* at

3   736–41; *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). Even when the prisoner seeks relief not

4   available in grievance proceedings, such as money damages, exhaustion is still a prerequisite to

5   suit. *Booth*, 532 U.S. at 741. If a claim is not exhausted, it must be dismissed. *McKinney v.*

6   *Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

7       Failure to exhaust administrative remedies is properly brought as a summary judgment

8   motion. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). Once the defendant proves (1)

9   there was an available administrative remedy and (2) the plaintiff failed to exhaust the available

10  remedy, the burden shifts to the plaintiff. To avoid dismissal, the plaintiff must then show there

11  was something peculiar about her claim that made the "existing and generally available

12  administrative remedies effectively unavailable to [her]." *Williams v. Paramo*, 775 F.3d 1182,

13  1191 (9th Cir. 2015) (citing *Hilao v. Est. of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).

14      In this case, Plaintiff filed suit while she was incarcerated at KCCF, so she is subject to

15  the PLRA's exhaustion requirement. In support of their exhaustion argument, Defendants submit

16  a sworn declaration from KCCF's records custodian (Ms. Williams) (Dkt. 22), KCCF's Inmate

17  Information Handbook describing the jail's grievance procedures (Dkt. 22, Ex. E), a copy of

18  Plaintiff's Classification Records (Dkt. 22, Ex. D), a copy of the Supervisor's Incident Report

19  relating to the September 5, 2022, incident (Dkt. 22, Ex. B), and copies of the grievances

20  Plaintiff filed about the two incidents at issue here (Dkt. 22, Exs. A, C).

21      In her declaration, Ms. Williams lays the foundation for the grievance procedures and

22  record keeping at KCCF (Dkt. 22, ¶¶ 3–5) and then testifies that Plaintiff filed two related

23  grievances while detained at the facility (*id.* ¶ 8, 10). Further, in their Motion Defendants note

24

Plaintiff was a frequent utilizer of the "kite" system at KCCF to grieve her complaints while at the facility, citing to Plaintiff's letter to the Court dated July 31, 2023. *See* Dkt. 20 at 4; Dkt. 6 at 11–19 (copies of Plaintiff's Service Request Kites). Upon review of this evidence and the undisputed facts, Defendants have satisfied their burden to prove that grievance procedures were available to Plaintiff at KCCF and, although she had used those procedures in the past, she chose not to appeal the grievance responses related to the issues complained of here.

Therefore, the burden shifts to Plaintiff to prove that KCCF's administrative procedures were effectively unavailable to her for redressing the concerns she raises in this suit. Despite being given ample opportunity to develop the record on this point, Plaintiff failed to respond in opposition to summary judgment. As a result, she has not shown that her failure to exhaust was excusable under the circumstances.

All of Plaintiff's claims, therefore, must be dismissed for failure to exhaust, *see Wright v. King County*, No. 2:18-cv-00737-JLR-BAT, 2018 WL 6977455, at *3 (W.D. Wash. 2018) ("Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim."), and the Complaint should be dismissed without prejudice, *see Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled on other grounds by Albino,* 747 F.3d at 1162 ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."); *Carrea v. California*, 551 F. App'x 368, 369 (9th Cir. 2014) (remanding for the entry of dismissal without prejudice because the proper remedy for non-exhaustion is dismissal without prejudice).

Accordingly, the Court recommends Defendants' Motion (Dkt. 20) be **GRANTED**.

**B.    Defendants' Remaining Arguments in Favor of Summary Judgment**

Because failure to exhaust is case dispositive, the Court need not address Defendants' additional arguments for summary judgment. *See Wright*, 2018 WL 6977455, at *3.

### IV.    CONCLUSION

For the reasons discussed above, the Court recommends that Defendants' Motion for Summary Judgment (Dkt. 20) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on June 13, 2024, as noted in the caption.

Dated this 30th day of May, 2024.

Grady J. Leupold
United States Magistrate Judge